# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **CARL POTTER,** *Plaintiff*, v. **CREDIT ACCEPTANCE CORPORATION,** *Defendant*. | Civil No.: 1:24-cv-01780-JRR |

## MEMORANDUM OPINION

This matter comes before the court on Defendant Credit Acceptance Corporation's Motion to Compel Arbitration and Stay Action (ECF No. 9; the "Motion to Compel"), as well as Plaintiff Carl Potter's "Motion for Evidentiary Hearing" (ECF No. 14) and "Motion for Competency Hearing" (ECF No. 15). The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion to Compel will be granted, the Motion for Evidentiary Hearing will be denied as moot, and the Motion for Competency Hearing will be denied.

**I.   BACKGROUND**

Plaintiff initiated this action against Defendant on June 18, 2024, alleging "breach of contract and negligence of fiduciary duty"—conduct that, according to Plaintiff, was contrary to the Uniform Commercial Code and Article I, Section 10 of the United States Constitution. (ECF No. 1; the "Complaint"). In his Complaint, Plaintiff alleges that he "entered into a consumer credit transaction with Defendant Credit Acceptance Corporation on November 7, 2022 for $24,546.54." *Id.* ¶ 3. Thereafter, Plaintiff states he sent a letter to Defendant, via its "CEO, CFO, and Trustee," regarding how to "handle" his accounts and "uphold their fiduciary duties." *Id.* ¶ 4. In that letter, Plaintiff "requested all cash payments made on the account be returned to him." *Id.* ¶ 5. However,

Defendant "ignored and did not honor Plaintiff['s] claim to credit." *Id.* ¶ 6. Plaintiff alleges that "Defendant is under a false conception that Plaintiff is liable for all interest payments and more," when he is not "the responsible party." *Id.* ¶ 12. As a result, Plaintiff contends that Defendant is "operating fraudulently." *Id.* ¶ 14.

Plaintiff further contends that the "signed Contract agreement" does not mention "selling [his] contract as a security on the market." *Id.* ¶ 16. Plaintiff states that he "took the [contract] . . . for value in good faith," and that "Defendant has acted fraudulent[ly] throughout this contract that both parties agreed to" and failed to perform its fiduciary duties, thus breaching the contract. *Id.* ¶¶ 19, 23. Plaintiff also includes a "Complaint for Replevin" attached to his other Complaint, wherein he alleges that Defendant "no longer hold[s] rights to enforce [the] contract with Plaintiff." (ECF No. 1-1 ¶ 1.)

The Contract at issue is a retail installment contract for the purchase of a 2014 Hyundai Elantra, with Plaintiff as Buyer, and Car Agentz, LLC as Creditor-Seller. (ECF No. 9-3; the "Contract.") The Contract was executed on November 7, 2022.[1] *Id.* Each page of the Contract contains Plaintiff's electronic signature or electronic initials. Related to the Contract, Plaintiff signed a "Declaration Acknowledging Electronic Signature Process," in which he agreed that he had "read, understood, and agreed to the eSign Consent form and consented to use legally binding electronic signatures to sign all documents necessary to process a retail installment transaction with [Car Agentz LLC]." (ECF No. 9-4.)

---

[1] The Contract contains a Maryland choice of law provision. (ECF No. 9-3 at p. 4.) It is not apparent whether Plaintiff has intended to assert claims arising under federal law in this action. Regardless, the court applies the law specified in the Contract when considering the validity of the Contract. *See Cunningham v. Feinberg*, 441 Md. 310, 326 (2015); *Ford v. Genesis Fin. Sols., Inc.*, --- F. Supp. 3d ---, No. CV DLB-23-2156, 2024 WL 1340356, at *5 (D. Md. Mar. 28, 2024); *Blue Ridge Risk Partners, LLC v. Willem*, 724 F. Supp. 3d 398, 403 n.3 (D. Md. 2024).

The Contract contains an assignment provision and an arbitration clause. The assignment provision assigns Seller Car Agentz LLC's interest in the Contract to Defendant:

> **ASSIGNMENT**
> FOR VALUE RECEIVED, Seller hereby assigns and transfers all Seller's right, title, and interest in and to this Contract, and in and to the Vehicle described herein, to CREDIT ACCEPTANCE CORPORATION ("Assignee"), its successors and assigns, pursuant to and in accordance with the terms and conditions set forth in the existing dealer agreement between Seller and Assignee in effect on the date hereof. Seller gives Assignee full power, either in Assignee's name or in Seller's name, to take all actions which Seller could have taken under this Contract. In order to induce Assignee to accept assignment of this Contract, Seller represents and warrants to Assignee as set forth in the existing dealer agreement.
>
> **NOTICE OF ASSIGNMENT: The Seller has assigned this Contract to Credit Acceptance Corporation in accordance with the terms and conditions set forth below on this Contract. This assignment is without recourse. You must make all future payments to: CREDIT ACCEPTANCE CORPORATION, 25505 WEST TWELVE MILE ROAD, SOUTHFIELD, MICHIGAN 48034-8339, 1-(800)-634-1506.**

(ECF No. 9-3 at p. 4) (bold typeface and capitalization in original).

Further, the first page of the Contract includes a notice of additional terms and conditions, stating: "THE ADDITIONAL TERMS AND CONDITIONS, INCLUDING THE **ARBITRATION CLAUSE** SET FORTH ON THE ADDITIONAL PAGES OF THIS CONTRACT ARE A PART OF THIS CONTRACT AND ARE INCORPORATED HEREIN BY REFERENCE." (ECF No. 9-3 at p. 1) (bold typeface and capitalization in original). The final page of the five-page Contract contains an arbitration clause (the "Arbitration Clause"), which provides in part:

> <u>ARBITRATION CLAUSE</u>
> This Arbitration Clause describes how a Dispute (as defined below) may be arbitrated. Arbitration is a method of resolving disputes in front of one or more neutral persons, instead of having a trial in court in front of a judge and/or jury. In this Arbitration Clause, "We" and

3

> "Us" mean Seller and/or Seller's assignee (including, without limitation, Credit Acceptance Corporation) or their employees, assignees, or any third party providing any goods or services in connection with the origination, servicing and collection of amounts due under the Contract if such third party is named as a party between You and Us. "You" and "Your" means each Buyer named above.
>
> **Your Right to Reject: If You don't want this Arbitration Clause to apply, You may reject it by mailing Us at P.O. Box 5070, Southfield, Michigan 48086-5070 a written rejection notice that describes the Contract and tells Us that You are rejecting this Arbitration Clause. A rejection notice is only effective if it is signed by all buyers, co-buyers and cosigners and the envelope that the rejection notice is sent in has a post mark of 30 days or less after the date of this Contract. If You reject this Arbitration Clause, that will not affect any other provision of this Contract or the status of Your Contract. If You don't reject this Arbitration Clause, it will be effective as of the date of this Contract. . . .**
>
> It is expressly agreed that this Contract evidences a transaction in interstate commerce. This Arbitration Clause is governed by the FAA and not by any state arbitration law.

(ECF No. 9-3 at p. 5) (bold typeface and capitalization in original). The Arbitration Clause defines "dispute" as "any controversy or claim between [Plaintiff] and [Seller and/or Seller's assignee, Defendant] arising out of or in any way related to this Contract . . . ." *Id.*

## II.   LEGAL STANDARD

"When a party who has agreed to arbitrate a dispute instead brings a lawsuit, the Federal Arbitration Act (FAA) entitles the defendant to file an application to stay the litigation." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 413 (2022).

As the United States Supreme Court has recently explained:

> The FAA was enacted in response to judicial hostility to arbitration. Section 2 of the statute makes arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As we have interpreted it, this provision contains two clauses: An

4

> enforcement mandate, which renders agreements to arbitrate enforceable as a matter of federal law, and a saving clause, which permits invalidation of arbitration clauses on grounds applicable to "any contract."

*Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 649–50, *reh'g denied,* 143 S. Ct. 60 (2022) (footnote omitted). Thus, "[a]rbitration is a matter of contract," *see Mey v. DIRECTV, LLC*, 971 F.3d 284, 288 (4th Cir. 2020) (quoting 9 U.S.C. § 2), and "[a]greements to arbitrate are construed according to the ordinary rules of contract interpretation, as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 710 (4th Cir. 2001).

Sections 3 and 4 of the FAA "provide[] two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). Accordingly, "when parties have entered into a valid and enforceable agreement to arbitrate their disputes and the dispute at issue falls within the scope of that agreement, the FAA requires federal courts to stay judicial proceedings, and compel arbitration in accordance with the agreement's terms." *Murray v. UFCW Int'l, Local 400*, 289 F.3d 297, 301 (4th Cir. 2002) (citing 9 U.S.C. §§ 3, 4); *see Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").

Section 4 of the FAA "reserves for trial the question of whether an arbitration agreement has been made, provided that a question of fact as to that issue is properly generated." *Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 548 (D. Md. 2019); *see* 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof."). However, "[i]n order to generate an issue for resolution by a factfinder, the party opposing

5

arbitration must make 'an unequivocal denial that the agreement [to arbitrate] had been made,' and must produce 'some evidence . . . to substantiate the denial.'" *Id.* (quoting *Drews Distributing, Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 352 n.3 (4th Cir. 2001)). "To decide whether 'sufficient facts' support a party's denial of an agreement to arbitrate, the district court is obliged to employ a standard such as the summary judgment test." *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019). Thus, the court may "consider materials other than the complaint and its supporting documents," and, where "the record reveals a genuine dispute of material fact," must conduct a trial on the motion to compel arbitration. *Id.* "[A] defendant who seeks to compel arbitration under the Federal Arbitration Act bears the burden of establishing the existence of a binding contract to arbitrate the dispute." *Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 456 (4th Cir. 2017).

### III.   ANALYSIS

As an initial matter, the court is ever mindful that *pro se* filings "must be construed liberally, . . . so as to do substantial justice," and are held to less stringent standards that filings drafted by lawyers. *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023) (quoting *Erickson v. Paradus*, 551 U.S. 89, 94 (2007); FED. R. CIV. P. 8(f); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "In practice, this liberal construction allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). However, such liberal construction does not absolve Plaintiff from pleading a plausible claim, and this court "may not act as an advocate for a self-represented litigant" by "conjur[ing] up" issues not presented. *Desgraviers v. PF-Frederick, LLC*, 501 F. Supp. 3d 348, 351 (D. Md. 2020) (quoting *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310,

314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

### A. Motion to Compel

Defendant avers that the dispute at issue in this litigation is subject to the Contract's binding Arbitration Clause and, accordingly, moves this court to stay this case and compel arbitration. (ECF No. 9-1 at p. 1–2.) Plaintiff raises no challenge to the existence of the Arbitration Clause and does not dispute that his claims are subject to it; instead, he asks the court to "dismiss" the Arbitration Clause, citing to the 1990 "Supreme Court Ruling" in *Strotz v. Dean Witter Reynolds, Inc.*[2] (ECF No. 11.) Plaintiff contends that he "unwittingly entered into the [Arbitration Clause] due to coercion or deception," and thus it "violates the general laws of contract" because it is the byproduct of fraud. *Id.* ¶¶ 2–3. Such fraudulent conduct includes, per Plaintiff, "extortion, racketeering, deceptive practices, [and] selling of the original contract to a third party unknowingly to Plaintiff."[3] *Id.* ¶ 5.

"[A] litigant can compel arbitration under the FAA if he can demonstrate '(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction . . . to interstate or foreign commerce, and (4) the failure . . . of the [opposing party] to arbitrate the dispute.'" *Roach v. Navient Sols., Inc.*, 165 F. Supp. 3d 343, 346–47 (D. Md. 2015) (citation omitted); *see Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991) (citing *Moses H. Cone,* 460 U.S. at 25–26 & n.

---

[2] This is not an opinion of the United States Supreme Court.

[3] Plaintiff filed an improper surreply without leave of court in violation of Local Rule 105.2(a) (D. Md. 2023). Plaintiff further fails to offer good cause to support the filing of a surreply; and Defendant does not advance new legal argument in its reply brief, but rather responds to Plaintiff's arguments. *See EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013), *aff'd in part sub nom. E.E.O.C. v. Freeman*, 778 F.3d 463 (4th Cir. 2015) ("Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply.") (*Khoury v. Meserve,* 268 F.Supp.2d 600, 605 (D. Md.2003)). While the court may therefore decline to consider Plaintiff's improper surreply, the court has reviewed it. Plaintiff's surreply does not affect the court's analysis.

34) (same).  Relevant here, "[a] court may invalidate an arbitration agreement based on 'generally applicable contract defenses' like fraud or unconscionability, but not on legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 650, *reh'g denied,* 143 S. Ct. 60 (2022) (quoting *Kindred Nursing Centers L. P.* v. *Clark*, 581 U.S. 246, 251 (2017)).

Because Plaintiff seeks to invalidate the Arbitration Clause based on purported fraud, the court first considers the validity of the Arbitration Clause.  *See Ngamby v. Manor Care of Potomac MD, LLC*, No. CV RDB-23-3185, 2024 WL 3013161, at *5 (D. Md. June 14, 2024).  As an initial matter, Plaintiff alleges no facts in his Complaint to support a finding that the Contract or Arbitration Clause are invalid due to fraud.  (ECF No. 1 ¶ 23.)  Indeed, the Complaint appears to seek to enforce the Contract and hold Defendant accountability for a breach of same.  *Id.* (describing the Contract as what "both parties agreed to").  Plaintiff may not amend his pleading through opposition to the Motion.  *See Nat'l Ass'n for Advancement of Colored People v. Bureau of Census*, 382 F. Supp. 3d 349, 377 n.17 (D. Md. 2019) (noting that an opposition to a motion to dismiss "is not a vehicle for amending a complaint"); *Whitten v. Apria Healthcare Grp., Inc.*, No. PWG-14-CV-3193, 2015 WL 2227928, at *6 (D. Md. May 11, 2015) (explaining that it is "axiomatic" that a complaint may not be amended by briefs in opposition).  Regardless, even considering Plaintiff's conclusory assertion of fraud in his opposition, he fails to set forth factual allegations in support thereof.  It is therefore insufficient.[4]  *See* FED. R. CIV. P. 9(b) ("In alleging

---

[4] To the extent Plaintiff contends there was fraud based on the assignment of the Contract to Defendant, such argument is inconsistent with his pleading allegation that he "entered into a consumer credit transaction with Defendant Credit Acceptance Corporation on November 7, 2022 for $24,546.54."  (ECF No. 1 ¶ 3.)  Moreover, the Contract contains multiple references to assignment to Defendant.  The foregoing all militate against a finding of fraud; in short, the pleadings fail to state a plausible claim, or basis for finding, fraud.

8

fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

The same is so even when construing Plaintiff's challenge as one of procedural unconscionability. As the Appellate Court of Maryland has explained:

> There are two aspects of unconscionability – procedural and substantive – both of which must exist for a court to decline to enforce an arbitration provision. *Doyle v. Fin. Am., LLC*, 173 Md. App. 370, 383, 918 A.2d 1266 (2007).
>
> Procedural unconscionability "concerns the process of making a contract and includes such devices as the use of fine print and convoluted or unclear language, as well as deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms." *Stewart v. Stewart*, 214 Md. App. 458, 477, 76 A.3d 1221 (2013) (internal quotations and citation omitted).
>
> Substantive unconscionability, on the other hand, "refers to contractual terms that are unreasonably or grossly favorable to the more powerful party and includes terms that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law[.]" *Stewart*, 214 Md. App. at 477-78, 76 A.3d 1221 (internal quotations and citation omitted). They are "provisions that seek to negate the reasonable expectations of the nondrafting party, and terms unreasonably and unexpectedly harsh ... having nothing to do with ... central aspects of the transaction." *Id.* at 478, 76 A.3d 1221.

*Rankin v. Brinton Woods of Frankford, LLC*, 241 Md. App. 604, 621–22 (2019).

Broadly construing Plaintiff's papers, he appears to challenge only the procedural unconscionability of the Arbitration Clause, which is insufficient to invalidate the Arbitration Clause. *See id.* However, as explained *supra*, Plaintiff has again failed to allege any facts of such unconscionability, and the conclusory assertions of unconscionability (and fraud) are even less compelling when considering the Contract and Arbitration Clause here. The Arbitration Clause is not hidden or set forth in fine print, *see id.*; indeed, the Contract is five pages, and the Arbitration Clause is referenced in bold on the first page, as well as set forth on its own page of the Contract.

(ECF No. 9-3.)  Plaintiff also executed (by signature or initials) every page of the Contract.  (ECF No. 9-3.)  Moreover, the Arbitration Clause contains a conspicuous "opt-out" provision which gave him "a determinative option to reject" the Arbitration Clause, and "effectively g[ave him] a choice to bargain over the terms."  *See Rotibi v. RealPage, Inc.*, No. 0804, Sept.term, 2023, 2024 WL 3948110, at *7 (Md. Ct. Spec. App. Aug. 27, 2024).  Plaintiff's unsupported assertion does not contradict the foregoing.[5]

For the same reasons, Plaintiff's reliance on *Strotz v. Dean Witter Reynolds, Inc.*, an opinion from a California appellate court, is not persuasive.  As an initial matter, this decision comes from a state appellate court, and not the United State Supreme Court as Plaintiff appears to represent.  It therefore has minimal, if any, persuasive value in this court as a general proposition; and it has none here.  Moreover, without even addressing the court's full opinion, which, as Defendant notes, has been overruled in part, the court there found that the plaintiff "ha[d] alleged sufficient facts of fraud . . . to warrant denial of defendants' petition to compel arbitration."  *Strotz v. Dean Witter Reynolds, Inc.*, 223 Cal. App. 3d 208, 220 (Cal. Ct. App. 1990), *overruled by Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394 (1996).  That is materially distinct from the circumstances here where Plaintiff has failed to do so.

For the foregoing reasons, the court is persuaded that the Arbitration Clause is not invalid based on fraud or unconscionability.  Having so concluded, the court considers whether Defendant may compel arbitration under the FAA.  The court is persuaded, and Plaintiff does not dispute, that all factors are met here—there is a dispute subject to the Arbitration Clause contained in the

---

[5] Even considering Plaintiff's improper surreply, Plaintiff has still failed to allege sufficient facts.  The basis of his opposition appears to be only that the "Car Sales company . . . failed to inform [him]" of the Arbitration Clause. (ECF No. 13 ¶ 4.)  This ignores repeated reference to the Arbitration Clause throughout the Contract that Plaintiff signed—and now seeks to enforce.  *See Walther v. Sovereign Bank*, 386 Md. 412, 429 (2005) ("[T]he law presumes that a person knows the contents of a document that he executes and understands at least the literal meaning of its terms." (quoting *Merit Music Service, Inc. v. Sonneborn*, 245 Md. 213, 221–22 (1967))).

10

Contract (claims arising from breach of the Contract); the transaction at issue affects interstate commerce, *see Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 697 (4th Cir. 2012) (concluding that a consumer credit arrangement wherein a party relied upon funds from a foreign source in the "transaction is sufficient to implicate the FAA"); and Plaintiff has not arbitrated the dispute. *See Roach*, 165 F. Supp. 3d at 346–47 (citation omitted). Defendant has met its burden to demonstrate a binding Arbitration Clause contained in the Contract that covers the dispute at issue. Accordingly, the court will grant the Motion, and will stay this action and order the parties to arbitrate.

### B. Motion for Evidentiary Hearing and Motion for Competency Hearing

Briefly, the court addresses Plaintiff's Motion for Evidentiary Hearing and Motion for Competency Hearing, both of which were filed after Defendant's Motion to Compel.[6] Plaintiff's Motion for Evidentiary Hearing (ECF No. 14) pertains to the allegations at issue in the Complaint and does not relate to the Motion to Compel. Because the court will grant the Motion to Compel and stay this case, the court will deny Plaintiff's Motion for Evidentiary Hearing as moot.[7]

Plaintiff's Motion for Competency Hearing (ECF No. 15) seeks a "competency hearing" to require Defendant's Chief Financial Officer Jay D. Martin to testify regarding the Contract at issue, including whether it is fraudulent. For the reasons the court has already explained, the court

---

[6] The court takes note of Plaintiff's correspondences at ECF Nos. 17 and 20 wherein Plaintiff notifies the court that, should it grant the Motion to Compel, he will "tak[e] other legal methods to ensure that [the undersigned] [is] held accountable for . . . negligence." (ECF No. 17 at p. 3.) The correspondence at ECF No. 20 appears to be an improperly filed letter to the Attorney General of the United States, noting similarly that if the undersigned refuses to "allow critical evidence regarding [his] case," Plaintiff's rights under the Fourteenth Amendment will be violated. As this court has repeatedly explained herein, Plaintiff states no plausible allegations in support of his claims of fraud to invalidate the Arbitration Clause, and he is not entitled to conduct a fishing expedition on his conclusory assertions thereof. *See St. Michael's Media, Inc. v. Mayor & City Council of Baltimore*, No. CV ELH-21-2337, 2023 WL 2743361, at *35 (D. Md. Mar. 31, 2023). Plaintiff is advised that warnings or threats of civil action against a court should it rule contrary to his wishes (*i.e.,* should the court grant the Motion to Compel) "constitute a gross abuse of the civil justice system he seeks to employ" *See Edokobi v. Toyota Motor Credit Corp.*, No. PWG-19-248, 2019 WL 2250568, at *3–4 (D. Md. May 24, 2019).

[7] Even were the Motion for Evidentiary Hearing to pertain to the Motion to Compel, Plaintiff makes no proffer as to what evidence would be gained from such a hearing that would bear on the merits of the Motion to Compel.

will deny this motion. Plaintiff offers no allegations in support of his assertion of fraud; and he seeks at once to enforce and challenge the Contract. Plaintiff may not contort the discovery process into a fishing expedition. *See St. Michael's Media, Inc. v. Mayor & City Council of Baltimore*, No. CV ELH-21-2337, 2023 WL 2743361, at *35 (D. Md. Mar. 31, 2023) ("Permitting plaintiffs to use discovery as a fishing expedition undermines the principle that only portions of a complaint which satisfy a plausibility standard, *i.e.*, more than possible and less than probable, should 'unlock the doors of discovery.'") (quoting *Dudek v. Nassau Cnty. Sheriff's Dep't*, 991 F. Supp. 2d 402, 414 (E.D.N.Y. 2013)). The court will therefore deny the Motion for Competency Hearing.

### IV.  CONCLUSION

For the reasons set forth herein, by separate order, the Motion to Compel (ECF No. 9) will be granted, the "Motion for Evidentiary Hearing" (ECF No. 14) will be denied as moot, and the "Motion for Competency Hearing" (ECF No. 15) will be denied. This action will be stayed pending resolution of this matter in arbitration.

Date: November 27, 2024

/S/
_____
Julie R. Rubin
United States District Judge